Case 4:20-cv-01347   Document 64   Filed on 07/07/23 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
July 07, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| 20100 EASTEX, LLC, | § § | |
| Plaintiff. | § § | |
| V. | § § | CIVIL ACTION NO. 4:20-cv-01347 |
| SALTGRASS, INC., | § § § | |
| Defendant. | § § | |

## MEMORANDUM AND RECOMMENDATION

Before me are competing cross-motions for summary judgment. Plaintiff 20100 Eastex, LLC ("Eastex") has filed a First Amended Motion for Partial Summary Judgment on Declaratory Relief Claims. Dkt. 57. Defendant Saltgrass, Inc. ("Saltgrass") has filed a Motion for Summary Judgment. Dkt. 58. After reviewing the summary judgment briefing, analyzing the evidentiary record, and hearing oral argument, I recommend that Eastex's motion be **DENIED**, and Saltgrass's motion be **GRANTED**.

## BACKGROUND

This case concerns a Reciprocal Easement Agreement and Restrictive Covenants (the "Easement Agreement") between two restaurants: Joe's Crab Shack Real Estate Holdings, Inc. ("Joe's Crab Shack") and Saltgrass. At the time the Easement Agreement was executed in November 2006, Joe's Crab Shack and Saltgrass owned separate tracts of property that were immediately adjacent to each other. Joe's Crab Shack owned a 1.5325 acre tract referred to as "Parcel I." Saltgrass owned a 2.3898 acre parcel referred to as "Parcel II." The stated purpose of the Easement Agreement was to "establish certain easements over Parcel I and Parcel

II, and to restrict the use of Parcel I and Parcel II, on the terms described" in the Easement Agreement. Dkt. 57-1 at 1.[1]

Section 3.3 of the Easement Agreement contains the key language restricting the use of both parcels. It prohibits a parcel owner from demolishing or constructing any new building without the other owner's written consent:

> No Owner may alter or reconfigure the Access Easement Areas or Parking Easement Areas located on such Owner's Parcel without the express prior written consent of the other Owner, which may be withheld in such other Owner's good faith business judgment. Moreover, no Owner may relocate any buildings or other improvements located on such Owner's Parcel, nor construct any new building or other improvements on such Owner's Parcel, nor alter or reconfigure the "footprint" of the buildings and other improvements located on such Owner's Parcel without the express prior written consent of the other Owner, which may be withheld in such other Owner's good faith business judgment.

Dkt. 57-1 at 5.

In January 2017, Eastex purchased Parcel I from Joe's Crab Shack, taking the property subject to the Easement Agreement. Soon after the purchase, the Joe's Crab Shack restaurant closed.

On September 20, 2019, Eastex signed a lease agreement with BJ's Restaurants, Inc. ("BJ's"). The BJ's lease, which was subject to a feasibility period, called for BJ's to demolish the vacant Joe's Crab Shack building and construct a new BJ's restaurant on the same footprint.

On September 24, 2019, BJ's—not Eastex—asked Saltgrass for permission to demolish the building on Parcel I and erect a new building in its place. In that

---

[1] Eastex complains bitterly that Landry's, Inc ("Landry's") owned both Joe's Crab Shack and Saltgrass at the time the Easement Agreement was executed. To be clear, there is nothing improper or untoward about corporate entities, even those who are affiliated, entering contracts with each other that they believe will advance their respective interests. As Landry's Deputy General Counsel Dash Kohlhausen explained: "We created the [Easement Agreement] in 2006 at a time when Landry's owned both the Saltgrass Steak House and Joe's Crab Shack concepts, specifically to prevent this type of disruption to the businesses on each parcel and to control future development of the properties, as any prudent developer would do." Dkt. 60-4 at 4.

request, which was sent by email, BJ's Director of Real Estate acknowledged that the Easement Agreement covered Parcel I and promised that "BJ's will conform to all terms set forth in the [Easement Agreement] and not make any changes to the existing drive aisles, circulation plan, or access points." Dkt. 60-2 at 3. In an October 10, 2019 email, Saltgrass refused to give BJ's permission to move forward with the demolition of the building on the property and the construction of a new restaurant on the property.

Undeterred, BJ's—not Eastex—sent a second request to Saltgrass on October 25, 2019. The second request asserted that Saltgrass had automatically given its permission for BJ's to proceed with construction because Saltgrass had failed to timely respond, in writing, to BJ's email with a good-faith business rationale for its decision. In advancing this argument, BJ's referenced Section 7.10 of the Easement Agreement. Section 7.10 states:

> Any approval permitted or required under this Agreement shall not be unreasonably withheld, conditioned or delayed and shall be deemed to be given if not denied in writing to the requesting Owner specifying the specific reasons for such denial within fifteen (15) days of the date of written request for such approval from the requesting Owner.

Dkt. 57-1 at 12. Saltgrass responded to BJ's letter on November 1, 2019. In that letter, Saltgrass made it abundantly clear that it did not consent—whether expressly, impliedly, or by default—to BJ's request to demolish the Joe's Crab Shack restaurant (which was, by now, vacant) and construct a new BJ's restaurant on Parcel I. Saltgrass further explained that Section 7.10 did not apply to the present situation because that contractual provision only required Saltgrass to respond within a certain period of time when a request came from an "Owner." BJ's, the November 1, 2019 letter noted, did not qualify as an "Owner" of Parcel I or Parcel II.

On April 15, 2020, Eastex filed the instant lawsuit, asserting three distinct causes of action. First, Eastex seeks a declaratory judgment that it is permitted to tear down the existing building on Parcel I and construct a new restaurant in its

place. Second, Eastex alleges that Saltgrass breached the Easement Agreement by "unreasonably/wrongfully withholding consent for the proposed demolition and/or construction of the new BJ's restaurant." Dkt. 1 at 11. Third, Eastex contends that Saltgrass breached the Easement Agreement "by failing to timely and properly respond to . . . BJ's notice letters." *Id.* at 12.

Both parties have moved for summary judgment, claiming that there is no genuine dispute as to any material fact.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (cleaned up).

To survive summary judgment, the nonmovant must "present competent summary judgment evidence to support the essential elements of its claim." *Cephus v. Tex. Health & Hum. Servs. Comm'n*, 146 F. Supp. 3d 818, 826 (S.D. Tex. 2015). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). At the summary judgment phase, I construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

A. **DECLARATORY JUDGMENT ACTION**

As noted, Eastex requests a declaratory judgment that (a) it "may demolish the vacant Joe's Crab Shack building and construct a new restaurant on [Parcel I]"; and (b) "BJ's may demolish the vacant Joe's Crab Shack building and begin construction of its new restaurant." Dkt. 1 at 11. Both sides seek summary judgment on Eastex's declaratory judgment claim.

Saltgrass argues that Section 3.3 of the Easement Agreement prohibits Eastex (or BJ's) from unilaterally demolishing or constructing a new restaurant on Parcel I without Saltgrass's express consent. Because Saltgrass has never given its consent for Eastex or BJ's to tear down the Joe's Crab Shack restaurant and construct a new BJ's restaurant on Parcel I, Saltgrass argues, summary judgment is appropriate on Eastex's claim for declaratory relief.

Eastex counters by asserting that the Easement Agreement is not intended to allow Saltgrass to prevent the vacant Joe's Crab Shack from being torn down and a new restaurant from being built in its place. According to Eastex, the Easement Agreement "is nothing more than an agreement that the properties in question may share each other's access points, walkways, and parking spaces." Dkt. 57 at 2.

Eastex's argument conveniently ignores the plain and unambiguous language of the Easement Agreement. The Easement Agreement specifically states on its very first page that Joe's Crab Shack and Saltgrass "desire . . . to restrict the use of Parcel I and Parcel II." Dkt. 57-1 at 1. And Section 3.3's language provides no wiggle room. It expressly provides that Eastex needs Saltgrass's consent to <u>both</u> demolish the existing structure on Parcel I and construct a new restaurant on the property. *See* Dkt. 57-1 at 5 ("[N]o Owner may . . . construct any new building or other improvements on such Owner's Parcel . . . without the express prior written consent of the other Owner, which may be withheld in such other Owner's good faith business judgment.").

5

As a legal matter, "[i]f a written contract is worded such that it can be given a definite or certain legal meaning, then it is" unambiguous. *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006). I "must enforce the unambiguous language in a contract as written, and the applicable standard is the objective intent evidenced by the language used, rather than by the subjective intent of the parties." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 845 (5th Cir. 2004); *see also Interstate Contracting Corp. v. City of Dallas*, 407 F.3d 708, 712 (5th Cir. 2005) ("[A]n unambiguous contract will be enforced as written."); *Dewitt Cnty. Elec. Co-op. v. Parks,* 1 S.W.3d 96, 100 (Tex. 1999) ("When a court concludes that contract language can be given a certain or definite meaning, then the language is not ambiguous, and the court is obligated to interpret the contract as a matter of law.").

Having determined that the express language of the Easement Agreement requires Eastex to obtain Saltgrass's consent before tearing down the existing structure or building a new one, I must now determine whether such consent has been given. It is clear that Saltgrass never affirmatively gave consent to Eastex or BJ's to proceed with the demolition of the old restaurant and the construction of a new restaurant on the site. As a result, Eastex is forced to argue that Saltgrass's consent "be deemed to be given" under Section 7.10 of the Easement Agreement. Dkt. 57-1 at 12. The problem with this argument is that Section 7.10 is inapplicable to the present situation. As noted above, Section 7.10 provides that if a "requesting Owner" makes a written request for approval, the responding Owner must provide a written denial "specifying the specific reasons for such denial" within 15 days. *Id*. Failure to timely and sufficiently respond to a "written request for such approval **from the requesting Owner**" results in consent "deemed to be given." *Id*. (emphasis added).

"Owner" is defined by the Easement Agreement to include Eastex and Saltgrass, and nobody else. *See id.* at 2 ("Owner" means "[a] record owner, whether one or more persons or entities, of fee simple title to all or any portion of Parcel I

6

and/or Parcel II."). Stated simply, Section 7.10 is only about what happens when a "requesting Owner" asks the other Owner for "[a]ny approval permitted or required" under the Easement Agreement. *Id.* at 12. Section 7.10 is irrelevant here because BJ's—not Eastex—asked for Saltgrass's consent. There is no summary judgment evidence before me that remotely suggests that Eastex ever made a written request to Saltgrass for consent to proceed with demolition or construction on Parcel I. As Saltgrass correctly observes:

> Saltgrass's consent cannot be "deemed to be given" because Saltgrass never "unreasonably withheld, conditioned or delayed" its consent for the simple reason that there was never a "requesting Owner." Put differently, Saltgrass cannot deny or withhold a request until the request happens. And [Eastex], as the Owner, never made a request to Saltgrass that would trigger Section 7.10.

Dkt. 60 at 16.

Had (1) Eastex made a written request to Saltgrass asking for Saltgrass's consent to demolish the existing structure on Parcel I and to put up a new building; and (2) Saltgrass failed to respond in writing "specifying the specific reasons for such denial within fifteen (15) days," consent would "be deemed to be given." Dkt. 57-1 at 12. But that is not what occurred here. Not close. Eastex never made a written request to Saltgrass seeking consent. Such a request by Eastex (not a request by a non-Owner like BJ's) is a prerequisite to the application of Section 7.10.

Although the Easement Agreement expressly provides that an Owner is only required to respond "within fifteen (15) days of the date of written request for such approval from the requesting Owner," *id.*, Eastex effectively asks me to write out of the Easement Agreement the words "from the requesting Owner." I cannot do that. It is black letter law that a district court must "give meaning, effect, and purpose to every *word* in the contract, if at all possible." *Tenn. Gas Pipeline Co. v. FERC*, 17 F.3d 98, 103 (5th Cir. 1994).

Because, as a legal matter, Eastex has no chance of prevailing on its declaratory judgment cause of action, Saltgrass is entitled to summary judgment on this claim.

**B.  BREACH OF THE EASEMENT AGREEMENT – UNREASONABLE WITHHOLDING OF CONSENT**

Eastex's second cause of action alleges that Saltgrass "unreasonably/wrongfully withheld consent" in violation of the Easement "by failing to provide any legitimate reason—or any reason at all—as to why it was withholding its consent." Dkt. 1 at 11–12. The specific contractual provision at issue is Section 3.3, which provides that an Owner, like Saltgrass, "may" withhold consent in its "good faith business judgment." Dkt. 57-1 at 5. Eastex asserts that Saltgrass did not act in its good faith business judgment.

This breach of contract claim fails for two reasons. First, as discussed above, Saltgrass cannot be accused of withholding its consent from Eastex when Eastex never asked Saltgrass for its written consent. Second, even if Eastex could overcome that hurdle, there is no summary judgment evidence to indicate that Saltgrass failed to act in its good faith business judgment. Eastex merely asserts that Saltgrass's "refusal to consent to the construction project makes little sense," and that a "jury could easily find [Saltgrass] was acting in bath faith . . . or, at the least, failed to exercise reasonable care." Dkt. 59 at 10. These "mere conclusory allegations are not competent summary judgment evidence, and such allegations are insufficient, therefore, to defeat a motion for summary judgment." *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *see Lamb v. Ashford Place Apartments L.L.C.*, 914 F.3d 940, 946 (5th Cir. 2019) ("A party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." (quotation omitted)); *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) ("[C]onclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment."). I thus

recommend that summary judgment be granted in Saltgrass's favor on this breach of contract claim.

C.  **BREACH OF THE EASEMENT AGREEMENT – UNTIMELY OBJECTION**

In its third cause of action, Eastex claims that Saltgrass breached the Easement Agreement "by failing to timely and properly respond to BJ's notice letters." Dkt. 1 at 12. It is Eastex's contention that Saltgrass was contractually required to respond in writing to BJ's request for consent within 15 days of the written request being made. I squarely addressed this argument in Section A and incorporate that reasoning here. In short, Saltgrass had no contractual obligation to respond to any written request for consent from BJ's. Accordingly, I recommend that summary judgment be granted in favor of Saltgrass on Eastex's breach of contract claim for an "untimely objection."

## CONCLUSION

In sum, I recommend that Eastex's First Amended Motion for Partial Summary Judgment on Declaratory Relief Claims (Dkt. 57) be **DENIED**; and Defendant Saltgrass's Motion for Summary Judgment (Dkt. 58) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 7th day of July 2023.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE