United States District Court
Southern District of Texas
**ENTERED**
July 21, 2025
Nathan Ochsner, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| 20100 EASTEX, LLC, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:20-cv-01347 |
| | § | |
| SALTGRASS, INC., | § | |
| | § | |
| Defendant. | § | |

### MEMORANDUM AND RECOMMENDATION

Defendant Saltgrass, Inc. has filed a motion for summary judgment. *See* Dkt. 96. Having reviewed the summary judgment briefing, analyzed the evidentiary record, and heard oral argument, I recommend the motion be granted.

### BACKGROUND

This case concerns the meaning of Section 3.3 of a Reciprocal Easement Agreement and Restrictive Covenants (the "Agreement").

Two affiliates of Landry's, Inc.—Saltgrass and Joe's Crab Shack Real Estate Holdings, Inc. ("Joe's Real Estate")—entered into the Agreement in 2006. Today, Saltgrass and Plaintiff 20100 Eastex, LLC ("Eastex") own adjoining tracts of land subject to the Agreement.[1]

Relevant to the instant dispute, the Agreement established various "Easements and Restrictions" on parcels of land. Dkt. 96-1 at 2. Specifically, each owner granted the other an easement over the roads, sidewalks, and parking lots on its parcel and agreed to only use its parcel for a full-service, sit-down restaurant. Section 3.3 provides in relevant part:

> No Owner may alter or reconfigure the [roads, sidewalks, and parking lots] located on such Owner's Parcel without the express prior written consent of the other Owner, which may be withheld in such other Owner's good faith business judgment. Moreover, no Owner may

---

[1] In January 2017, Eastex purchased property from Joe's Real Estate subject to the Agreement.

> relocate any buildings or other improvements located on such Owner's Parcel, nor construct any new building or other improvements on such Owner's Parcel, nor alter or reconfigure the "footprint" of the buildings and other improvements located on such Owner's Parcel without the express prior written consent of the other Owner, which may be withheld in such other Owner's good faith business judgment.

*Id.* at 5.

In 2020, Eastex filed this lawsuit against Saltgrass, seeking a declaratory judgment that Eastex was entitled to demolish the existing structure on its property and construct a new building in its place. Eastex also sued for breach of contract, alleging that Saltgrass breached the Agreement by unreasonably withholding consent and taking too long to respond to a request to construct a new building. Both sides moved for summary judgment. I recommended that summary judgment be granted in favor of Saltgrass. Judge George C. Hanks, Jr. adopted my recommendation in its entirety. Eastex appealed to the Fifth Circuit.

The Fifth Circuit affirmed the grant of summary judgment to Saltgrass on Eastex's breach-of-contract claims, but it reversed the grant of summary judgment to Saltgrass on the declaratory-judgment claim. *See 20100 Eastex, L.L.C. v. Saltgrass, Inc.*, No. 23-20414, 2024 WL 4589077, at *5 (5th Cir. Oct. 28, 2024). The Fifth Circuit disagreed that Section 3.3 was unambiguous, holding that the Agreement could reasonably be interpreted to limit the consent requirements to situations where "the new building would impair access to or otherwise alter the parking spaces, access roads, or walkways on the property—i.e., impact the easements." *Id.* at *4. According to the Court of Appeals, "there are at least two reasonable interpretations of Section 3.3: (1) as a requirement of approval for any new construction, and (2) as a requirement of approval for constructions affecting the easements." *Id.* "In light of these two reasonable interpretations," the Fifth Circuit held that "Section 3.3 is ambiguous" and remanded the case for further proceedings consistent with its opinion. *Id.*

Saltgrass has now moved for summary judgment again. This time Saltgrass argues that "[t]he undisputed evidence shows unequivocally that the signatories to the Agreement intended the consent requirement to apply to **all** new construction," not just construction affecting the easements. Dkt. 96 at 3. In response, Eastex contends that the Fifth Circuit's determination that Section 3.3 is ambiguous means that a "jury is required to interpret the ambiguity, and the summary judgment analysis should end there." Dkt. 97 at 3.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To survive summary judgment, "the nonmoving party must come forward with evidence to support the essential elements of its claim on which it bears the burden of proof at trial." *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 712 (5th Cir. 1994). The nonmovant's "burden will not be satisfied by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (quotation omitted). Rather, "the non-movant must identify specific evidence in the summary judgment record demonstrating that there is a material fact issue concerning the essential elements of its case for which it will bear the burden of proof at trial." *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007) (quotation omitted). At the summary judgment phase, I construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020).

## ANALYSIS

"The primary concern of a court in construing a written contract is to ascertain the true intent of the parties as expressed in the instrument." *Nat'l Union Fire Ins. Co. of Pittsburgh v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). "An unambiguous contract will be enforced as written, and parol evidence will not

be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports." *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008). "Only where a contract is first determined to be ambiguous may the courts consider the parties' interpretation . . . and admit extraneous evidence to determine the true meaning of the instrument." *Nat'l Union Fire Ins.*, 907 S.W.2d at 520.

The Fifth Circuit has already held in this case that "Section 3.3 is ambiguous." *20100 Eastex*, 2024 WL 4589077, at *4. As a result, I may consider extrinsic evidence to ascertain the true meaning of Section 3.3. That extrinsic evidence is undisputed. As discussed below, the signatories to the Agreement unquestionably intended Section 3.3's consent provision to apply to all new construction, not just construction affecting the easements.

To shed light on the meaning of Section 3.3, I look back to 2006, when Landry's affiliates Saltgrass and Joe's Real Estate owned, respectively, a Saltgrass Steak House and Joe's Crab Shack in Humble, Texas. The restaurants, which were located on adjoining parcels of land bordered on the west by Highway 59, shared access and parking. Landry's also owned a third, undeveloped parcel to the east of the restaurants ("East Parcel").

Sometime in 2006, Landry's decided to sell Joe's Crab Shack. In preparation for the sale, Steven Scheinthal, Landry's Executive Vice President and General Counsel, had Saltgrass and Joe's Real Estate enter into the Agreement "to preserve each of the businesses and their access, their parking, their view corridors, and traffic flow," including the East Parcel. Dkt. 96-2 at 49. Scheinthal's insight as to the meaning of Section 3.3 is particularly important because he oversaw the Agreement's creation and signed the document on behalf of both Saltgrass and Joe's Real Estate as Vice President for both entities.

As Scheinthal explained at his deposition:

> So we were selling the Joe's Crab Shack chain, and we had a Saltgrass restaurant that was situated on the same parcel. And we felt

4

> it necessary to preserve the value of the Saltgrass and the parcel that was to the east, and we needed to preserve the values of those assets.
>
> And the way the buildings were designed and constructed, we wanted to make sure that those—that design didn't change because it was—we felt like maximized the value for the Saltgrass and the parcel that we still owned that was to the east.

*Id.* at 49–50. There is no doubt that Scheinthal wanted both Saltgrass and Joe's Real Estate to have control over any new construction, not just construction affecting the easements. As he put it, "the whole purpose" of the Agreement was to give both entities the "business judgment to either allow" or not allow demolishment or renovation of the other property. *Id.* at 69. In a declaration attached to Saltgrass's motion for summary judgment, Scheinthal explained:

> [If] either restaurant [the Saltgrass Steak House or Joe's Crab Shack] were redeveloped to have a larger or taller building, the building could block the view of the East Parcel from Highway 59. If the East Parcel were blocked from view, its value for future development would be reduced. . . .
>
> . . . .
>
> . . . [A] factor that can affect a restaurant's success is how easy it is to see from adjacent roadways.
>
> When preparing the Reciprocal Easement Agreement, it was important to me to protect the access and view corridors for both the East Parcel and the Saltgrass Steak House, so the East Parcel could remain attractive for development and the Saltgrass Steak House could continue to thrive. I wanted the Joe's location to have that ability to thrive as well. I made the agreement reciprocal to ensure it was fair and both restaurants would have the ability to protect their success.

Dkt. 96-6 at 2.

I fully agree with Saltgrass's observation that this case presents an "unusual situation." Dkt. 96 at 17.

> Typically, when a contract ends up in litigation, the parties **to the original contract** dispute its meaning and their intent. Here, **both** parties to the contract shared **the same corporate parent, the same executive leadership, and the same goal**: preserve the value of the assets by maintaining control—subject to

good-faith business judgment—over construction on the adjoining tract. As the person **in** charge of making this happen for both parties, Scheinthal's intent **is** the intent of the parties.

*Id.*

Faced with Scheinthal's testimony that the parties intended for Section 3.3 to impose a consent requirement for any new construction, Eastex is boxed into a corner. Eastex cannot offer any contrary evidence related to the parties' intent because Scheinthal "controlled the strategy, purpose, and development of the Agreement" for both Saltgrass and Joe's Real Estate. *Id.* at 15. Nonetheless, Eastex raises several arguments in opposition to summary judgment.

First, Eastex argues that "[i]t is well settled that when a written instrument contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument is a fact issue reserved to the factfinder." Dkt. 97 at 2. This is not an accurate statement of the law. The Texas Supreme Court has held that "even in those cases of ambiguous instruments, if the parol evidence is undisputed as to the circumstances, the construction is yet a question of law for the court." *Brown v. Payne*, 176 S.W.2d 306, 308 (Tex. 1943) (quotation omitted). Texas courts have long applied this simple concept.[2] To task a jury with determining Section 3.3's meaning, (1) the provision must be ambiguous, *and* (2) the extrinsic evidence must be disputed. *See id.* Although the Fifth Circuit has characterized Section 3.3 as ambiguous, the extrinsic evidence

---

[2] *See, e.g.*, *In re Hite*, 700 S.W.2d 713, 718 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.) (holding that "there were no factual matters at issue," despite a latent ambiguity, "because the extrinsic evidence admitted was undisputed."); *In re O'Hara's Est.*, 549 S.W.2d 233, 238 (Tex. App.—Dallas 1977, no writ) ("[C]onstruction of a written instrument is ordinarily a question of law for the court, and even if it contains language on its face ambiguous, but extrinsic evidence of circumstances is undisputed, construction of the instrument is still a question of law for the court."); *Amend v. Light*, 443 S.W.2d 877, 884 (Tex. App.—Amarillo 1969, writ ref'd n.r.e.) (upholding trial court's construction of lease terms where the extrinsic evidence was undisputed)*; Schindler v. Thomas*, 434 S.W.2d 187, 189 (Tex. App.—Corpus Christi 1968, no writ) ("We hold the trial court properly granted summary judgment on the uncontroverted evidence explaining the provisions of the written instrument.").

offered by Saltgrass is not in dispute. Because the extrinsic evidence is undisputed, I must construe Section 3.3 as a matter of law. *See id.*; *Nat. Polymer Int'l Corp. v. FedEx Freight, Inc.*, No. 4:16-cv-00359, 2017 WL 3537324, at *3 (E.D. Tex. Aug. 17, 2017) ("When a contract is ambiguous, the meaning of the terms is a question of fact. . . . However, when there is no dispute as to the circumstances, the construction is still a matter of law for the court.").

Second, Eastex contends that Saltgrass employed high-powered lawyers who should have been able to draft an unambiguous contract. That might be true, but it does not advance Eastex's position in this lawsuit. The fact is that Section 3.3 is ambiguous. As a result, I must consider extrinsic evidence in determining the true meaning of Section 3.3. That extrinsic evidence is conclusive.

Third, Eastex argues that I should reject Scheinthal's testimony that he intended for Section 3.3 to apply to all new construction because such a position runs counter to the Agreement's structure and is thus "ludicrous." Dkt. 97 at 12. This argument has been rejected by the Fifth Circuit. *See 20100 Eastex*, 2024 WL 4589077, at *4 (holding that both parties' interpretations of Section 3.3 are reasonable). I need say nothing more.

At the end of its reply brief, Saltgrass perfectly summarizes this case: "Saltgrass provided substantial, undisputed extrinsic evidence in support of a single interpretation of Section 3.3, and Eastex failed to provide any contrary evidence demonstrating a genuine issue of material fact." Dkt. 99 at 6. "Because the undisputed extrinsic evidence points to only one interpretation of Section 3.3, this Court should grant summary judgment to Saltgrass." *Id.*

## CONCLUSION

For the reasons discussed above, I recommend that summary judgment be granted in favor of Saltgrass on Eastex's declaratory judgment claim.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R.

Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 21st day of July 2025.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

8